UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Mike Ross, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   - against -<br><br>Target Corporation,<br><br>      Defendant | 1:21-cv-03028<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Target Corporation ("defendant") manufactures, markets, labels and sells alcohol-based hand sanitizer products under its up&up private label brand that purports to "Kill[s] 99.99% of Germs*."

 

I. Representations are False and Misleading

2. According to one definition, "germs" refers to the microscopic bacteria, viruses, fungi, and protozoa that can cause disease.

3. The front label statement is false because there is no scientific study which indicates any alcohol-based hand sanitizer kills 99.99 of germs.

4. The front label statement is misleading because alcohol-based hand sanitizers, such as the Product, are incapable of killing many types of germs, including the most harmful and prevalent germs.

5. For instance, the Product is unable to kill non-enveloped viruses, like norovirus.

6. Norovirus is the virus which causes more than fifty-eight (58) percent of foodborne illnesses in this country.

7. Therefore, by claiming to kill 99.9% of germs, reasonable consumers will expect the Product is effective against one of the most prevalent viruses, when it is not.

8. Over the past decade, it has been shown that many bacteria, such as enterococcus faecium, are becoming alcohol-resistant, which makes the front label statements further misleading.

9. The Product is not able to kill other germs of significance, such as protozoan cysts, bacterial spores, parasites like Giardia, and Clostridium difficile, which causes diarrhea.

II. Fine Print Disclaimer is Insufficient to Overcome Misleading Front Label Claims

10. The back of the Product contains dense fine print in the Drug Facts.



11. In miniscule font beneath the Drug Facts, the asterisk from the front label states:

*Effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds.

3

12. Even if plaintiff scrutinized the labeling to discover this statement, it still would not tell him that the Product is unable to kill the most relevant and prominent germs, such as norovirus, enterococcus and other emerging germs of concern.

13. Further, this statement fails to disclose that no scientifically credible study supports the claims of the Product being able to kill 99.99% of germ.

14. Even if defendant had such a study, the statement would still be misleading because the certainty and precision of the 99.99% caused consumers, including plaintiff, to expect that this necessarily included *relevant* and *significant* germs, when it did not.

III. Conclusion

15. The Product contains other representations which are false and misleading.

16. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives, such as soap and water.

17. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

18. Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

19. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

20. The Product is sold for a price premium compared to other similar products, no less than $6.79 for 32 OZ, higher than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

21. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

22. Diversity exists because Plaintiff and Defendant are citizens of different states.

23. Upon information and belief, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

24. Plaintiff Mike Ross is a citizen of Illinois.

25. Defendant Target Corporation is a Minnesota corporation with a principal place of business in Minneapolis, Hennepin County, Minnesota.

26. Venue is proper because plaintiff resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## Parties

27. Plaintiff Mike Ross is a citizen of Romeoville, Will County, Illinois.

28. Defendant Target Corporation, is a Minnesota corporation with a principal place of business in Minneapolis, Minnesota, Hennepin County.

29. Defendant operates almost two thousand (2000) brick-and-mortar stores in the United States, where it sells products ranging from groceries to consumer electronics.

30. Defendant sells over-the-counter ("OTC") pharmaceutical items under its private label up&up brand.

31. Up&up is known for being equivalent in quality, and in many instances, of greater quality, than national brands.

32. Coupled with defendant's status as a retailer Americans have come to trust, up&up products comprise a large and growing percentage of defendant's revenue and profit.

33. Plaintiff bought the Product at or exceeding the above-referenced price, on one or more occasions at one or more locations, including defendant's store, 13460 Archer Ave, Lemont, IL 60439, between November 2020 and January 2021, among other times.

34. Plaintiff relied on the front label statement that the Product kills 99.99% of germs.

35. Plaintiff bought the Product because he wanted to use a product that was capable of killing 99.99% of all germs.

36. Plaintiff believed that the precision of this claim meant it was supported by scientifically valid studies, when this was not true.

37. Plaintiff believed that the 99.99% claim necessarily included the germs of material significance to the public, such as norovirus.

38. Plaintiff believed the Product was more effective than soap and water in killing germs, based in part on the precision of the claim.

39. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

40. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its capabilities and features.

## Class Allegations

41. The class will consist of all purchasers of the Product who reside in Illinois during the applicable statutes of limitations.

42. The class will consist of all Illinois residents who purchased the Product at any store within Illinois or ordered it for delivery into Illinois, during the statutes of limitations.

43. Notice is feasible for reasons including, upon information and belief, defendant's possession of knowledge of where the purchasers of the Product are located and can obtain more

detailed information about the purchasers of the Product through its loyalty programs.

44. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

45. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

46. Plaintiff is an adequate representative because his interests do not conflict with other members.

47. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

48. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

49. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

50. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

51. Plaintiff incorporates by reference all preceding paragraphs.

52. Plaintiff and class members desired to purchase a product which was able to kill 99.99% of germs, including the germs of material significance, and that the 99.99% claim was supported by scientific studies.

53. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

54. Defendant misrepresented the Product through statements, omissions, ambiguities,

half-truths and/or actions.

55. Plaintiff relied on the representations.

56. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

57. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was able to kill 99.99% of germs, including the germs of material significance, and that the 99.99% claim was supported by scientific studies.

58. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

59. This duty is based on Defendant's outsized role in the market for this type of Product and a trusted retailer.

60. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

61. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and in legal proceedings.

62. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

63. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

64. Defendant had a duty to truthfully represent the Product, which it breached.

65. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area – a trusted seller of over-the-counter pharmacy items.

66. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

67. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

68. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

69. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that able to kill 99.99% of germs, including the germs of material significance, and that the 99.99% claim was supported by scientific studies

70. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its composition and qualities.

### Unjust Enrichment

71. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

9

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: June 5, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com